IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA

v.                                                    Case No. 3:25-cr-160-DJN

DAVANTE AANDRELL JEFFERSON,

*Defendant*.

## UNITED STATES' MOTION FOR
## REVOCATION OF MAGISTRATE JUDGE'S ORDER OF RELEASE

Pursuant to 18 U.S.C. § 3145(a)(1), the United States hereby asks the Court to revoke the magistrate judge's order releasing Defendant, Davante Aandrell Jefferson, on conditions. As explained below, Defendant presents a risk of flight and a substantial danger to the community. Indeed, each of the statutorily prescribed factors that guide a court's detention determination weigh against pretrial release. Accordingly, Defendant should be detained.

## BACKGROUND

### A.    Facts and Procedural History

As articulated in greater detail at the detention hearing[1], this matter stems from a carjacking and attempted bank robbery that occurred in the City of Richmond on September 13, 2025. On September 13, 2025, around 5:00a.m., H.L., a Hispanic male, walked outside of his home to warm up his vehicle before travelling to work. While at the vehicle, which was parked

---

[1] The United States has not yet obtained a transcript of the detention hearing. As such, references herein to evidence and testimony presented at the hearing are based solely on undersigned counsel's recollection. A transcript has been requested by the United States and will be provided to the Court for review once it is received.

outside of his apartment in the Southwood Apartments Complex, located at 1438 Clarkson Road, Richmond, Virginia, two black males approached him from behind. The taller of the males pointed a black, semi-automatic firearm at H.L. while the shorter of the males, Defendant, demanded, "money, money," and forcefully took items from H.L.'s pockets.

Defendant took two phones from H.L. and his wallet. Inside of the wallet was H.L.'s Wells Fargo debit card. The males demanded H.L.'s debit number, which he wrote in the condensation on his car's window. The males then forced H.L. into the backseat of his vehicle. The taller male sat in the driver's seat of H.L.'s vehicle, while Defendant held H.L. at gunpoint in the backseat. The taller male drove them to the Wells Fargo Bank, located at 7202 Midlothian Turnpike, North Chesterfield, Virginia, 23225. Once at the bank, the taller male pulled into the drive-through, next to the bank ATM. Defendant attempted to withdraw money from the ATM, using H.L.'s pin number, which did not work. Defendant demanded that H.L. get out of the vehicle and try to withdraw money. When he did so, H.L. took off running toward a nearby Starbucks (located at 7106 Midlothian Turnpike, Richmond, Virginia 23225). The suspects drove off in H.L.'s vehicle, which was recovered, abandoned, by Richmond Police hours later.

On September 15, 2025, Richmond Police obtained a copy of the surveillance footage from the Wells Fargo ATM. From that footage, detectives identified Defendant as the suspect in the back seat with H.L. and the suspect who had attempted to make the cash withdrawal. Defendant was easily recognized by detectives who are familiar with him from a federal investigation involving Defendant's criminal street gang, "FMLL," which stands for "Family,

2

Money, Love, Loyalty." Defendant also has distinctive tattoos on his arms that were recognized by detectives.[2]

On October 20, 2025, Detective Myers met with the manager of the Starbucks, located at 7106 Midlothian Turnpike. The manager corroborated that just after he opened the store, on September 13, 2025, a Hispanic male, who appeared to be ducking (as if to hide), appeared at the drive-through window and was speaking in Spanish to a customer. Though the manager did not understand what the male was saying, he put fingers up to his head, to simulate a gun being pointed at him. He recalled the Hispanic male being scared and attempting to hide behind the building. The manager called the police on behalf of the male.

On September 30, 2025, Defendant was arrested by the Richmond Police Department and was advised of his *Miranda* rights. During an interview with Detective Myers, Defendant initially denied being a part of the carjacking, but when confronted with the surveillance photographs, admitted to being involved, knowing about a firearm, identified the firearm, and identified his accomplice by name. However, Defendant continued to mitigate his role in the offense and how he got involved.

On October 17, 2025, Defendant was held without bail by the Richmond Circuit Court.[3] On December 2, 2025, a Grand Jury in the Eastern District of Virginia, Richmond Division, returned a true bill, charging Defendant with one count of carjacking, in violation of 18 U.S.C. §§ 2 & 2119(1), one count of using, carrying, and brandishing a firearm during and in relation to

---

[2] *See* Government's Exhibit 1, which was admitted at the detention hearing.

[3] *See* attached Order from the Circuit Court of the City of Richmond.

a crime of violence, in violation of 18 U.S.C. §§ 2 & 924(c)(1)(A)(ii), and one count of attempted bank robbery, in violation of 18 U.S.C. §§ 2 & 2113(a).

On December 22, 2025, following the completion of a Pretrial Services Report ("PTSR"), Defendant appeared before Judge Speight for a detention hearing. At the conclusion of the hearing, the magistrate judge ordered Defendant released on a personal recognizance bond, subject to standard conditions as well as certain special conditions, including, among other things: remaining in the custody of a third-party custodian, home detention, location monitoring, supervision by the Pretrial Services Office, banned from Southwood Apartment Complex, prohibition from receiving, accepting, or making calls with individuals incarcerated at local or federal facilities, and no contact with fellow gang members, affiliates, or the co-conspirator in the current offense.

The government respectfully appeals that decision and requests a hearing on the motion for revocation of the bond order.

## APPLICABLE LAW

Where, as here, a defendant is ordered released pending trial by a magistrate judge, the government may file a motion for revocation of the order with the court having original jurisdiction over the offense. 18 U.S.C. § 3145(a)(1). When the district court acts on such a motion, it does so *de novo*, and although the court must make an independent determination of the proper pretrial detention or conditions of release, *see United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989), it may incorporate into its analysis any evidence or reasons relied on by the magistrate judge, *see United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009), and it is free to utilize the record of the proceedings before the magistrate judge, *see United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001); *United States v. Cole*, 715 F. Supp. 677, 677 (E.D. Pa. 1988).

4

If the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the defendant *must* be detained pending trial. 18 U.S.C. § 3142(e). The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's pretrial release.

"For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Stewart*, 19 F. App'x at 48. While the government must prove by clear and convincing evidence that the defendant poses a danger to the community and that no conditions of release can reasonably assure the safety of others, the government is only required to show by a preponderance of the evidence that the defendant poses a risk of flight and that no conditions of release can reasonably assure his appearance at trial. *See United States v. Mallory*, 268 F. Supp. 3d 854, 861 (E.D. Va. 2017).

## ARGUMENT

Respectfully, the magistrate judge erred in finding that Defendant should be released pending trial. An analysis of the factors set forth in § 3142(g) reveals that there are no conditions that can reasonably assure either Defendant's future appearances or the safety of any other person and the community. Accordingly, the magistrate judge's order should be revoked, and Defendant should be ordered detained.

5

**A.      The § 3142(g) Factors Weigh Uniformly in Favor of Detention**

Congress has prescribed the criteria that courts are to consider in making bail determinations.  Here, each of the factors weighs in favor of detention.

### 1.      The Nature and Circumstances of the Offense (18 U.S.C. § 3142(g)(1))

To say that the offense charged in this case is serious is to state the obvious.  *See* 18 U.S.C. § 3142(g)(1) (specifically directing court to consider "whether the offense . . . involves a . . . firearm").  Indeed, lying in wait for an innocent victim to rob and carjack is a predatory offense.  Here, the gravity is amplified by the fact that Defendant utilized a firearm and then held that firearm to the victim's head while they drove to an ATM attempting to steal the victim's money.  Instead of simply taking the victim's phones, debit card, and vehicle, Defendant and his cohort forced the victim into the vehicle, at gunpoint, and escalated the danger.  The victim believed that he was going to die that morning.  It is a minor miracle, given the circumstances, that nobody was seriously injured.  Thus, the nature and circumstances of the offense are as serious as it gets and weigh in favor of detention.

### 2.      The Weight of the Evidence (18 U.S.C. § 3142(g)(2))

The weight of the evidence is extremely strong.  Defendant's encounter with the victim at the Wells Fargo ATM was captured on surveillance footage.  The high-definition footage shows Defendant clearly trying to withdraw money from the victim's bank account using his pin number.  The victim's escape and attempted chase of him by the second suspect – an extremely dangerous situation — was also captured on video.  When caught and confronted with the photographs, Defendant admitted to his presence and participation in the crime, which was accomplished because of the firearm.  The weight of the evidence against Defendant is strong and weighs in favor of detention.

3.    <u>The History and Characteristics of the Defendant (18 U.S.C. § 3142(g)(3))</u>

Defendant's history and characteristics also weigh in favor of detention.  With respect to § 3142(g)(3)(A), the PTSR is rife with inconsistent and contradictory information supplied by Defendant.

Defendant informed the Pretrial Services Officer that he had been living with his girlfriend in Richmond, Virginia, between July 2025 and September 30, 2025.  However, when he was arrested, Defendant told detectives that he had been living in an apartment with his girlfriend for "like a week."  Prior to that, Defendant told detectives that he was living in "Fulton" for "months" after "mov[ing] out" from living with his "grandma."  Defendant told detectives that he moved to Georgia when he was ten and "grew up most in Georgia."  When interviewed by the Pretrial Services Officer, Defendant's grandmother stated that he lived with his aunt, Debra Wilson, from age 8 until he moved out in 2024.  Defendant told the Pretrial Services Officer that he lived with Ms. Wilson and her husband at 624 Arizona Drive in Richmond, Virginia from age 15 or 16 until 2024.

Defendant also reported to the Pretrial Services Officer that he worked for his grandfather's painting business, Miles Painting, from March 2025 until his arrest on September 30, 2025. However, Defendant's grandmother told the Pretrial Services Officer that Defendant worked for her husband's company from August 2024 through December 2024 or January 2025.

Oddly, Defendant also gave inconsistent information regarding his departure from high school.  Defendant told the Pretrial Services Officer that he dropped out of Huguenot High School during his 12th grade year due to not having money for necessities and his aunt being sick.  When asked the same question, his grandmother said that Defendant told her he had issues with transportation so she and the school made arrangements to get him to and from school.  Ultimately,

his grandmother recalled Defendant stopped going to school because he was "hanging out with the wrong crowd."

The defendant's lack of candor to Pretrial Services, and by extension to the Court, is troubling and calls into question his amenability to supervision. *See United States v. Maxwell*, 510 F. Supp. 3d 165, 175 (S.D.N.Y. 2020) ("Most notably, the Defendant's pattern of providing incomplete or erroneous information to the Court or to Pretrial Services bears significantly on the Court's application of the third factor to the present case."). After a lengthy detention hearing, there is still no clarity as to where Defendant has been living, how he has been supporting himself financially, or how he will support himself financially in the future.

More concerning than the lack of candor is Defendant's recent criminal history, which demonstrates consistent firearm use and theft. In April 2024, Defendant was charged in the City of Richmond for possession of a concealed weapon. Though he was found not guilty of that offense, a year later, he was again arrested in Richmond for carrying a loaded firearm in public. This May, Defendant was convicted of that offense and received a sentence of six months suspended. Three days later, Defendant was charged with reckless driving and driving without a license.

Six weeks later, Defendant was charged with entering property to damage in the City of Richmond. That offense was charged because Defendant was unlawfully in a vacant apartment in the Southwood Apartment Complex, with fellow gang members who possessed drugs and a gun. That apartment is known to Richmond Police as an area from which the gang traffics drugs daily.[4]

---

[4] The government is prepared to call witness(es) from RPD and the FBI to corroborate this information at a hearing, if allowed.

While on bond from Richmond for the property charge, Defendant was arrested for Grand Larceny and, again, driving without a license, in Chesterfield.  He was given another bond, then one month later committed the instant offense – all while under the suspended sentence in Richmond from May.[5]

Finally, under 18 U.S.C. § 3142(g)(3), the Court shall consider Defendant's record concerning his appearance at court proceedings.  The best indicator for whether a defendant will appear in court is whether they have done so in the past.  Just last month, while facing a much less serious felony – with no mandatory time – Defendant failed to appear for his preliminary hearing in Chesterfield County.  The court appointed Defendant an attorney, and he still failed to let his attorney, or the court, know where he was.  As a result, a capias was issued for his arrest.  At the detention hearing, defense counsel minimized this offense as Defendant not having a ride.  However, Defendant appeared in Richmond the next day for his misdemeanor case and was arrested due to the pending indictment and the outstanding warrant from Chesterfield.  Defendant's lack of concern for missing court for a low-level felony and not making any attempts to right the wrong until he was caught and arrested in another jurisdiction should concern the Court and counsel in favor of detention.

    4.    <u>The Nature and Seriousness of the Danger Posed by the Defendant (18 U.S.C. § 3142(g)(4)</u>

The defendant clearly poses a risk of harm to the community.  Lying in wait to steal from and threaten a completely innocent person who was simply going to work is inexcusable and unnecessary.  Using a gun to threaten someone is violent behavior and proves that Defendant –

---

[5] Which the Court shall consider under 18 U.S.C. § 3142(g)(3)(B).

who is now facing his third arrest for a firearm offense in the last year – poses a significant threat to the community.

### B.    Conditions of Release Cannot Meaningfully Reduce the Risk of Harm to the Community and the Serious Risk of Flight

In response to the information presented at the detention hearing, among other conditions, the magistrate judge ordered that Defendant be subject to home detention, with supervision by Pretrial Services, location monitoring technology, and a third-party custodian. These conditions do little in this case to reduce Defendant's serious risk of nonappearance.  Moreover, given that Defendant has already demonstrated that he will not abide by terms and conditions of release, it can hardly be said that such conditions will significantly ameliorate the risk of harm he poses to the community.

Conditions of release only protect the public if the defendant follows them, and Defendant has proven that he will not.  Being of good behavior, not violating the law, maintaining employment, and residing where one is supposed to are standard terms for all probationers, but Defendant appears to have been not doing any of these things while already under court supervision in Richmond and Chesterfield.

The magistrate judge made mention that Defendant was "not doing so well" since he moved out of Ms. Wilson's house, so she was "giving [him] a chance" to get back on track. Defendant is a member of a criminal street gang which perpetrates violence in the Richmond Community, to further their drug and gun trafficking business.  Most of the gang members have been under state or federal indictment since the summer.  Even after they were locked up, Defendant returned to Southwood Apartment Complex, where he does not live, and victimized an innocent person.  His friends are not the cause of his problems, and his behavior cannot be

10

explained by where he lives or with whom he lives.  Defendant is a threat to the community and letting him out is not the way to keep the community safe.

Further, the conditions of release do not mitigate the serious risk of flight.  As other courts have recognized, "location monitoring is inadequate because ankle monitors can be removed and ensure only a reduced head start should a defendant decide to flee." *United States v. Wang*, No. 23 CR. 118-3 (AT), 2023 WL 4551637, at *3 (S.D.N.Y. July 14, 2023) (citing *United States v. Freeman*, No. 21 Cr. 88 (S.D.N.Y.), Bail Hr'g 5:4-6, Feb. 19, 2021. ECF No. 50 ("Anyone who knows the technology of electronic monitoring knows that it is far from foolproof."), *and United States v. Zarger*, No. 00 Cr. 773, 2000 WL 1134364, at *1 (E.D.N.Y. Aug. 4, 2000) (stating that electronic monitoring "at best . . . limits a fleeing defendant's head start")).  As such, location monitoring merely provides notice of, and does little to prevent, flight.

## CONCLUSION

The factors set out in 18 U.S.C. § 3142(g) weigh heavily in favor of detention.  Defendant, while under a suspended sentence for a firearm offense, and while on bond for unlawful entry and grand larceny in two separate jurisdictions, used a firearm to threaten, rob, and carjack an innocent member of the Richmond Community.

Once he was caught, Defendant lied about being in Southwood Apartment Complex or at Wells Fargo on September 13, 2025, until he was confronted with the surveillance pictures of his face.  Even then, Defendant mitigated his role and made up a story about how he got involved in the offense.  Then when interviewed by Pretrial Services, he provided inconsistent information regarding his housing, employment, drug use, and education.

The defendant plainly constitutes a danger to the public and a risk of flight. Accordingly, the United States respectfully urges this Court to revoke the magistrate judge's release order and detain the defendant pending trial.

Respectfully submitted,

~~LINDSEY HALLIGAN~~
~~United States Attorney & Special United States~~
~~Attorney~~ <span style="color:red">(Struck per Memorandum Order entered 1/20/26 ECF 23)</span>

TODD W. BLANCHE
Deputy Attorney General

ROBERT K. MCBRIDE
First Assistant United States Attorney

By: _____/s/_____
Katherine E. Groover
Virginia Bar No. 89213
Special Assistant United States Attorney
United States Attorney's Office
Suite 1900
919 East Main Street
Richmond, Virginia 23219
Tel.: (804) 819-5470
Fax: (804) 771-2316
Katherine.groover@usdoj.gov