IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

      v.                                                  Criminal No. 3:25cr160 (DJN)

DAVANTE AANDRELL JEFFERSON,
      Defendant.

## MEMORANDUM ORDER
### (Striking and Barring Future Use of Title; Providing Notice)

This matter comes before the Court on the United States of America's (the "Government") Response to the Court's January 6, 2026 Order (ECF No. 22 ("Response")), which was submitted to the Court and signed by Ms. Lindsey Halligan on January 13, 2026. Ms. Halligan's filing comes in response to an Order directing her to file a pleading explaining the basis for her continued identification of herself as the United States Attorney for the Eastern District of Virginia in the face of United States District Judge Cameron McGowan Currie's binding Court Orders, issued on November 24, 2025, that found Ms. Halligan's appointment as Interim U.S. Attorney unlawful under both 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution. (ECF No. 16 at 1;) *see* Opinion and Order Granting Motion to Dismiss Indictment, *United States v. Comey,* Criminal Case No. 1:25cr272 (E.D. Va. Nov. 24, 2025) (hereafter the "*Comey* Opinion"), ECF No. 213 at 28 (finding that the "appointment of Ms. Halligan as Interim U.S. Attorney violated 28 U.S.C. § 546 and the Appointments Clause of the U.S. Constitution."); *United States v. James,* Criminal Case No. 2:25cr122 (E.D. Va. Nov. 24, 2025) (hereafter the "*James* Opinion"), ECF No. 140 at 16 ("I conclude that the Attorney General's attempt to install Ms. Halligan as Interim U.S. Attorney for the Eastern District of

Virginia was invalid and that Ms. Halligan has been unlawfully serving in that role since September 22, 2025."). In both opinions, Judge Currie concluded that "[a]ll actions flowing from Ms. Halligan's defective appointment . . . [constituted] unlawful exercises of executive power . . . ." *Comey* Opinion at 28; *James* Opinion at 25.

Ms. Halligan's response, in which she was joined by both the Attorney General and the Deputy Attorney General, contains a level of vitriol more appropriate for a cable news talk show and falls far beneath the level of advocacy expected from litigants in this Court, particularly the Department of Justice. The Court will not engage in a similar tit-for-tat and will instead analyze the few points that Ms. Halligan offers to justify her continued identification of her position as United States Attorney before the Court. Ultimately, the Court concludes for the reasons that follow that Ms. Halligan's continued identification of herself as the United States Attorney for this District ignores a binding court order and may not continue; otherwise, Ms. Halligan and anyone who joins her on a pleading containing the improper moniker subjects themselves to potential disciplinary action in this Court pursuant to the Court's Local Rules.

## I.     Relevant Procedural History

In her opinions, Judge Currie set forth the procedural history leading up to her decision. The Court recounts here only that history necessary to evaluate Ms. Halligan's position in this case:

> On January 20, 2025, Jessica Aber, who had been nominated by President Biden and confirmed by the Senate, resigned from her position as U.S. Attorney for the Eastern District of Virginia. The following day, the Attorney General appointed Erik Siebert as Interim U.S. Attorney under 28 U.S.C. § 546. Mr. Siebert's 120-day interim appointment was set to expire on May 21, 2025. So, on May 9, 2025, the judges of the district exercised their authority under section 546(d) to appoint Mr. Siebert to continue in his role, effective May 21.

> On September 19, 2025, Mr. Siebert informed colleagues of his resignation . . . . [O]n September 22, 2025, the Attorney General issued an order "authorizing Lindsey Halligan to be the Interim United States Attorney for the Eastern District of Virginia during the vacancy in that office" ("September 22 Order"). Att'y Gen. Order No. 6402-2025. The September 22 Order cites only 28 U.S.C. § 546 as the basis for Ms. Halligan's appointment.
>
> On September 25, 2025, a grand jury sitting in the Eastern District of Virginia returned a two-count indictment against Mr. Comey, charging him with making false statements within the jurisdiction of the legislative branch, in violation of 18 U.S.C. § 1001(a)(2), and obstructing a congressional proceeding, in violation of 18 U.S.C. § 1505 . . . . Ms. Halligan was the only prosecutor who participated in the Government's presentation to the grand jury, and only her signature appears on Mr. Comey's indictment.
>
> On October 20, 2025, Mr. Comey moved to dismiss the indictment on the ground that Ms. Halligan's appointment was unlawful under section 546 and violated the Appointments Clause. On October 21, the Chief Judge of the Fourth Circuit designated [Judge Currie] to consider [the motion] and any other motion "concerning the appointment, qualification, or disqualification of the United States Attorney or the United States Attorney's Office" in the Eastern District of Virginia.

*Comey* Opinion at 4–6 (internal citations omitted).

As noted by Judge Currie, in response to the motion filed by Mr. Comey, Chief Judge Albert Diaz of the Court of Appeals for the Fourth Circuit acting in response to a request by the then-Chief Judge of this District issued an Order that states as follows:

> WHEREAS, matters are pending in the United States District Court for the Eastern District of Virginia in which parties have filed, or may file, motions seeking the disqualification of the United States Attorney or the United States Attorney's Office for that District;
>
> WHEREAS, pursuant to the authority vested in me by Title 28, United States Code, Section 292(b), I may designate and assign a judge from another district within this Circuit for limited purposes in the interest of maintaining public confidence in the impartial administration of justice,
>
> THEREFORE, I hereby designate and assign the Honorable Cameron McGowan Currie, Senior United States District Judge for the District of South Carolina, to sit in the Eastern District of Virginia for the limited purpose of hearing and determining pending and future motions concerning the appointment, qualification, or disqualification of the United States Attorney or the United States Attorney's Office in the case of <u>United States</u>

Page 3 of 18

> <u>of America v. James B. Comey, Jr.</u>, Criminal Action No. 1:25-cr-00272-MSN-1, and in other cases involving similar challenges against the United States Attorney or United States Attorney's Office for the Eastern District of Virginia.
>
> This designation extends only to such motions and any ancillary or related proceedings necessary to their resolution.

*United States v. Comey*, ECF No. 62-1 (hereafter "C.J. Diaz Order"); *see also United States v. James*, ECF no. 23-1 (same).

Importantly, Chief Judge Diaz's Order did not transfer the *Comey* case to Judge Currie. Instead, he ordered that *the issue of the validity of Ms. Halligan's appointment in that case and in any "other cases involving similar challenges"* in the District would be transferred to Judge Currie for resolution. In accordance with Chief Judge Diaz's Order, my colleague Judge Nachmanoff transferred the *Comey* motion to Judge Currie. *United States v. Comey*, ECF No. 62. Thereafter, when Ms. James filed a similar motion in her case, my colleague Judge Walker similarly followed Chief Judge Diaz's Order. *United States v. James*, ECF No. 23.

On November 24, 2025, Judge Currie issued her opinions in the *Comey* and *James* cases about the validity of Ms. Halligan's appointment and the indictments returned in those cases. In terms that could not have been clearer, Judge Currie held that Ms. Halligan's appointment as "Interim U.S. Attorney for the Eastern District of Virginia was invalid and that Ms. Halligan has been unlawfully serving in that role since September 22, 2025." *Comey* Opinion at 17; *James* Opinion at 16. The Government filed a notice of appeal in both cases on December 19, 2025. *United States v. Comey*, ECF No. 217; *United States v. James*, ECF No. 142. As of this writing, the Department of Justice has not sought a stay of Judge Currie's rulings from her, the presiding judge in either case, or the Fourth Circuit. Moreover, Ms. Halligan has filed no motions of any sort in this Court seeking the ability to continue to identify herself as the United States Attorney despite Judge Currie's rulings, nor has she sought appointment by the district judges of this

Page 4 of 18

Court pursuant to 28 U.S.C. § 546(d). And, although the President has nominated her for the position, the United States Senate has yet to act on the nomination. Notably, even if Ms. Halligan was validly appointed by Attorney General Bondi on September 22, 2025, that appointment would expire today, January 20, 2026. Att'y Gen. Order No. 6402-2025 ("I designate and appoint Lindsey Halligan to serve as the United States Attorney for the Eastern District of Virginia and to serve in that capacity for the period of one hundred and twenty days or until replaced in accordance with law, whichever occurs first. The appointment shall be effective September 22, 2025.").

Despite Judge Currie's rulings, Ms. Halligan has continued to identify herself as the United States Attorney for this District in pleadings, including on the Indictment and other pleadings in this case. Some of my colleagues have orally struck the invalid moniker, while others have made notations that indicate their rejection of Ms. Halligan's identification as the United States Attorney. I elected to give Ms. Halligan an opportunity to explain her position, which led to the Order dated January 6, 2026 (ECF No. 16). After reviewing Ms. Halligan's filing and piercing through the unnecessary rhetoric, I find her position to be unavailing.

## II.     Analysis

Ms. Halligan essentially offers the following arguments for her continued identification as the United States Attorney. Ms. Halligan initially asserts that Judge Currie's rulings do not prevent her from identifying herself as the United States Attorney and, further, that her holding does not constitute binding precedent. Next, Ms. Halligan asserts that the party presentation rule somehow prevents the Court from *sua sponte* inquiring as to whether Ms. Halligan accurately identifies herself as the United States Attorney. Relatedly, Ms. Halligan also complains about the Court's reference to the ethical implications of her false assertions in pleadings with this

Court that she serves as the United States Attorney for this District. The Court will address each argument in turn.[1]

### A. Judge Currie Conclusively Determined that Ms. Halligan's Appointment was Invalid.

Ms. Halligan first asserts that Judge Currie's Order finding Ms. Halligan's appointment unlawful has no effect on Ms. Halligan's ability to refer to herself as the United States Attorney for the Eastern District of Virginia in court filings within that District. In support, Ms. Halligan highlights that Judge Currie did not expressly enjoin her from continuing to perform the functions of the office to which she was unlawfully appointed. (Response at 2.) In addition, Ms. Halligan submits that Judge Currie did not issue a declaratory judgment on the question of her appointment's legality, and that even if she had, such a declaratory judgment would fail to compel a change in how Ms. Halligan represents herself to the Court. (*Id.* at 3.) According to Ms. Halligan, under the Supreme Court's recent opinion in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), district courts lack the authority to "bind the United States" in cases involving third parties. (*Id.*)

Yet, in levying this argument, Ms. Halligan fails to acknowledge the unique context of Judge Currie's Order, which fatally undermines her argument. As set forth above, on October 21, 2025, Chief Judge Diaz of the Fourth Circuit issued an Order designating and assigning Judge Currie to "hear[] and determin[e] pending and future motions concerning the appointment,

---

[1] Ms. Halligan also asserts that former Special Counsel Jack Smith continued to use his title after his appointment was found to be invalid. Ms. Halligan's references to former Special Counsel Jack Smith do not merit serious consideration, given the inapposite context. Ms. Halligan appears to share the current administration's unhealthy obsession with the former Special Counsel. But Mr. Smith's decision to leave intact his signature block following a court order asserting the illegality of his appointment lacks legal significance here. As such, the Court will not be diverted from addressing the issues related to the lawfulness of Ms. Halligan's assertions.

qualification, or disqualification of the United States Attorney or the United States Attorney's Office" in the matter of *United States v. Comey* and all "other cases involving similar challenges." C.J. Diaz Order.[2] Chief Judge Diaz issued his order pursuant to the authority vested in him as the Chief Judge of this Circuit by 28 U.S.C. § 292(b) and "in the interest of maintaining public confidence in the impartial administration of justice." *Id.*

Critically, Chief Judge Diaz assigned Judge Currie to resolve not a particular motion in a particular case, but a specific issue: the validity of Ms. Halligan's appointment. With words that that could not have been clearer, Chief Judge Diaz directed Judge Currie to resolve any and all motions, "pending and future," concerning the appointment of the United States Attorney, both in the *Comey* case and *other cases "involving similar challenges"* to Ms. Halligan's appointment. *Id.* In so doing, Chief Judge Diaz, in his capacity as Chief Judge of the Fourth Circuit, granted Judge Currie the authority to resolve the issue of the legality of Ms. Halligan's appointment on behalf of all judges regularly sitting in the Eastern District of Virginia. He did so for the purpose of "maintaining public confidence in the impartial administration of justice" and in recognition of the potential for a perception of conflicts of interest among the judges sitting in the Eastern District of Virginia, who regularly adjudicate matters litigated by the United States Attorney's Office in that District. *Id.* As such, Judge Currie was appointed with the express mandate to speak for all judges in this District on the issue of Ms. Halligan's appointment and her authority to act pursuant to that appointment. Judge Currie's voice

---

[2] The Court notes that Ms. Halligan appeared as counsel of record in both the *Comey* and *James* matters. As such, Ms. Halligan is well aware of the existence of Chief Judge Diaz's Order.

constitutes the voice of all of the district judges of this Court, and her determination of this issue necessarily extends to all matters in our Court.[3]

Rather stunningly, Ms. Halligan fails to even mention Chief Judge Diaz's Order, let alone discuss its impact here. In short, Ms. Halligan has not only ignored Judge Currie's rulings, she has also turned a blind eye to an Order from the Chief Judge of the Fourth Circuit. The Court finds it inconceivable that the Department of Justice, which holds a duty to faithfully execute the laws of the United States — even those with which it may have disagreement — would repeatedly ignore court orders, while simultaneously prosecuting citizens for breaking the law. In the wise words of Judge J. Harvie Wilkinson III of the Court of Appeals for the Fourth Circuit, "[w]e yet cling to the hope that it is not naïve to believe our good brethren in the Executive Branch perceive the rule of law as vital to the American ethos." *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *3 (4th Cir. Apr. 17, 2025).

Ms. Halligan's suggestion that Judge Currie's Order — speaking, as it does, for all judges in this District — fails to affect how she may identify herself in court filings before this Court rings hollow. Ms. Halligan asserts that, since Judge Currie's finding concerning her unlawful appointment only served as the *rationale* for her dismissal of the *Comey* and *James* indictments, rather than the operative judgment, it fails to possess any legal effect. (Response at 3.) Ms.

---

[3] This unique procedural posture involving Judge Currie's expansive authority to rule on Ms. Halligan's appointment on behalf of all judges in this District disposes of Ms. Halligan's arguments that (1) Judge Currie did not issue a declaratory judgment and (2) even if she had, "[n]othing in the Declaratory Judgment Act authorizes a district court to issue advisory declarations governing the Executive Branch's conduct in unrelated proceedings not before the court." (Response at 3.) Whether or not Judge Currie's Orders constituted a declaratory judgment is irrelevant here, where Chief Judge Diaz granted her the authority to rule on the validity of Ms. Halligan's appointment on behalf of all judges in this District, and where the resulting order constitutes the law of this District with respect to all similar challenges to Ms. Halligan's appointment.

Halligan's argument fundamentally misunderstands the legal significance of such rationales. "It is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases." *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020). And as the Fourth Circuit reiterated just recently, "a decision's rationale binds us even if some immaterial facts differ." *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265, 271 (4th Cir. 2025); *see Payne v. Taslimi*, 998 F.3d 648, 655 (4th Cir. 2021) ("If necessary to the outcome, a precedent's reasoning must be followed.").

Ms. Halligan does not contest that Judge Currie's holding concerning her unlawful appointment was necessary to the outcome of her rulings. As such, the distinction that Ms. Halligan seeks to draw between Judge Currie's rulings and the *ratio decidendi* underpinning them lacks legal significance and fails to undermine the binding nature of Judge Currie's determination. *See Ramos*, 590 U.S. at 104 n.54 ("[T]he traditional answer to the question of what is a precedent is that subsequent cases falling within the *ratio decidendi*—or *rationale*—of the precedent case are controlled by that case") (quoting Frederick Schauer, *Precedent*, in *Routledge Companion to Philosophy of Law* 129 (Andrei Marmor ed., 2012)).

Ms. Halligan's arguments based on the Supreme Court's recent decision in *Trump v. CASA, Inc.* are similarly inapposite. Ms. Halligan quotes *CASA* for the proposition that "'neither declaratory nor injunctive relief' applies beyond the parties." (Response at 3 (quoting *CASA*, 606 U.S. at 844).) But that statement concerned the "enforcement of contested statutes or ordinances," neither of which stands at issue here. *CASA*, 606 U.S. at 844. More importantly, *CASA* addressed the specific question of the legality of nationwide or universal injunctions — "whether Congress has granted federal courts the authority to universally enjoin the enforcement of an executive or legislative policy" — which the Court correctly termed an "expansive

remedy." *Id.* at 839–40.  No such injunction was ordered here, as Ms. Halligan readily points out.  Nor does this Court concern itself with representations made by Ms. Halligan in other courts around the country.  The Court's concerns about Ms. Halligan's representation do not implicate the specific concerns that the *CASA* Court set out to address and, more importantly, do not reach beyond this Court, let alone across the Nation.  Rather, the Court simply applies the legal precedent promulgated by Judge Currie's Order, which disposed of the validity of Ms. Halligan's appointment for all matters in which her unlawful appointment becomes an issue in this District, to include the specific indictment in the case at hand.

Significantly, while *CASA* sought to address what it termed the problem of district courts "asserting the power to prohibit enforcement of a law or policy against *anyone*," *CASA*, 606 U.S. at 837 (emphasis in original), it did not concern itself with open defiance of Court orders.  Quite to the contrary:  as the *CASA* Court affirmed, "[n]o one disputes that the Executive has a duty to follow the law." *Id.* at 858.  That includes Ms. Halligan.

In sum, Judge Currie, speaking for all district judges in this District, found Ms. Halligan's appointment as Interim United States Attorney unlawful and issued two orders dismissing indictments, both of which were premised directly on that rationale.  Those Orders, though currently on appeal, have not been overturned or stayed, and thus constitute the law of this District.  Having been found by this Court to be unlawfully appointed, Ms. Halligan lacks lawful authority to represent herself as the United States Attorney before this Court.

Importantly, in the face of Judge Currie's rulings, Ms. Halligan had numerous legal options that could have potentially allowed her to validly identify herself as the United States Attorney while the Senate considers her nomination.  First, she could have sought a stay from Judge Currie, Judge Nachmanoff and Judge Walker, or the Fourth Circuit.  Second, she could

have petitioned the district judges of this Court to appoint her to the position pursuant to 28 U.S.C. § 546(d), as the Court did at the request of this Department of Justice for Mr. Siebert. Alternatively, she could have filed a motion with the Chief Judge allowing her to continue to use the moniker pending appeal, or filed individual motions seeking permission to use the title before each of the district judges of this Court as her office filed new cases either by indictment or information. Ms. Halligan chose none of these legal avenues; instead, she elected to simply ignore valid court orders issued by Judge Currie at the direction of the Chief Judge of the Fourth Circuit. The Court cannot tolerate such obstinance, because doing so would undermine the very essence of the Rule of Law. If the Court were to allow Ms. Halligan and the Department of Justice to pick and choose which orders that they will follow, the same would have to be true for other litigants and our system of justice would crumble. *See Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) (it remains a "bedrock principle that our system of government is founded on the rule of law."). Simply flouting a judicial order because of a disagreement of "interpretation" and acting like that order does not exist is simply not an option. *See Cooper v. Aaron*, 358 U.S. 1, 24 (1958) (Frankfurter, J., concurring) ("Criticism need not be stilled. Active obstruction or defiance is barred.").

### B. The Court Holds a Fundamental Duty to Protect the Integrity of the Judicial Process and to Enforce its Ethical Rules

Ms. Halligan next complains that the Court acted on its own initiative in requiring her to explain her use of the title of United States Attorney instead of waiting for a defense attorney to file a motion attacking her use of the title. Here again, Ms. Halligan's complaints lack merit.

It remains emphatically within the power of every federal judge to "preserve the integrity of the judicial process" in service of the rule of law. *In re Jemsek Clinic, P.A.*, 850 F.3d 150, 157 (4th Cir. 2017). As Justice Scalia eloquently explained:

> Article III courts, as an independent and coequal Branch of Government, derive from the Constitution itself, once they have been created and their jurisdiction established, the authority to do what courts have traditionally done in order to accomplish their assigned tasks. Some elements of that inherent authority are so essential to "[t]he judicial Power," U.S. Const., Art. III, § 1, that they are indefeasible, among which is a court's ability to enter orders protecting the integrity of its proceedings.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 58 (1991) (Scalia, J., dissenting). Judges also shoulder an unequivocal duty to act in the face of threats to that integrity stemming from the actions of lawyers practicing before them. *See* Code of Conduct for United States Judges, Canon 1 ("A judge should maintain and enforce high standards of conduct"); Canon 3B(6) ("A judge should take appropriate action upon receipt of reliable information indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct."); Commentary to Canon 3B(6) ("Public confidence in the integrity and impartiality of the judiciary is promoted when judges take appropriate action based on reliable information of likely misconduct."); *see also* Canons of Judicial Conduct for the Commonwealth of Virginia, Canon 3D(2) ("A judge having knowledge that a lawyer has committed a violation of the Code of Professional Responsibility that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects should inform the Virginia State Bar.") Thus, the Court's identification of potential ethics violations by Ms. Halligan, who appears before this Court as an attorney of record, and its provision of notice to Ms. Halligan regarding these concerns fall squarely within its Article III authority, Ms. Halligan's separation-of-powers arguments notwithstanding.

Indeed, for example, this Court enforced its ethical rules against a notorious criminal defense attorney (and former Commonwealth's Attorney) from Richmond, Joseph Morrissey, who defied the Court's Local Rules and the Court's Orders. In doing so, the Court found him in contempt, sentenced him to a total of six months' imprisonment (to include a violation of the

terms of his probation), and ultimately disbarred him from practice before this Court. *See In re Morrissey*, 305 F.3d 211 (4th Cir. 2002); *In re Morrissey*, 996 F. Supp. 530 (E.D. Va. 1998), *aff'd*, 168 F.3d 134 (4th Cir. 1999), *cert. denied*, 527 U.S. 1036 (1999). The Fourth Circuit affirmed this Court's jurisdiction to consider Morrissey's disbarment and its decision to order disbarment. *In re Morrissey*, 305 F.3d at 218. In so doing, it affirmed the panel's reiteration that "[f]ederal courts have the inherent power to control the admission of attorneys to their bars and to discipline attorneys who appear before them." *Id.* at 224 (citing *Chambers*, 501 U.S. at 43). As Mr. Morrissey's matter powerfully demonstrates, there exists no reason why this Court should perform its critical function of maintaining the integrity of judicial proceedings with any less vigor when the miscreant serves in federal or state government, as Ms. Halligan currently does (and as Mr. Morrissey once did).

And to be clear, Ms. Halligan's employment with the Department of Justice offers her no safe haven from the ethical rules of this Court, regardless of her state bar membership. The Court's ability to address potential ethics violations by Ms. Halligan or any other Government attorney is expressly set forth in the Local Rules of this Court, which, in turn, incorporate the Virginia Rules of Professional Conduct. *See* E.D. Va. Loc. Crim. R. 57.4(M) ("All counsel admitted to practice before this Court pursuant to subsections (C), (D) [governing federal government attorneys "appearing pursuant to the authority of the United States Attorney's Office for the Eastern District of Virginia" and who do not otherwise require "admission to practice in this Court"], (E), or (F) shall be subject to the rules, conditions and provisions set forth in full as Appendix B to these Local Rules."); Fed. R. of Disciplinary Enforcement ("FRDE") IV(B) [set forth in Appendix B of the Local Rules] ("Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the

Virginia Rules of Professional Conduct adopted by this Court shall constitute misconduct and shall be grounds for discipline"); *In re Morrissey*, 305 F.3d at 224 ("Federal courts have the inherent power to control the admission of attorneys to their bars and to discipline attorneys who appear before them." (citing *Chambers*, 501 U.S. at 43 and *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531 (1824))). Under FRDE V, the Court may refer such a matter to counsel for investigation and the prosecution of a formal disciplinary proceeding. FRDE V(A). Notably, the FRDE also extend to actions by attorneys acting "in concert with any other person or persons" that violate the Virginia Rules. FRDE IV(B). Stated more simply: all attorneys who appear in this Court, including all Government attorneys who sign pleadings submitted to this Court are bound to abide by the Virginia Rules of Professional Conduct — and if they fail to do so, the Court may refer them for further investigation and potential disciplinary action.

Finally, Ms. Halligan argues that the Court lacked the authority to enter its January 6 Order, and lacks the power to strike the errant portion of her signature block, without a request to that effect by a defendant. While true that a defense motion would have also provided a valid vehicle to address whether Ms. Halligan's actions in this case violated her ethical obligations before this Court, that fact, and Ms. Halligan's repeat invocations of the "party presentation" principle, fail to neuter the Court's ability to do so on its own.

As is well-established, "[d]ue to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). Under that power, "a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions." *Id.* at 462; *see also Projects Mgmt. Co. v. Dyncorp*

*Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (affirming the district court's use of its inherent authority to dismiss a claim where the plaintiff "was on clear notice of the district court's consideration of the use of its inherent authority and had a full opportunity to argue its position before the court.")  The Supreme Court has reminded lower federal courts that these inherent powers "must be exercised with restraint" and formulated two principles to govern their use:  an exercise of the court's inherent power (1) "must be a reasonable response to a specific problem" and  (2) "cannot contradict any express rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 46, 48 (2016).

The Court's authority to issue an order in this matter and to ultimately strike Ms. Halligan's unlawful assertion that she serves as the U.S. Attorney for the Eastern District of Virginia falls comfortably within its inherent power to impose both "respect" for, and "compliance with[,] lawful mandates." *Shaffer*, 11 F.3d at 461. Ms. Halligan's insistence on including "United States Attorney" in her signature block exhibits disrespect not just for this Court, but also flaunts the Rule of Law more broadly.  It also self-evidently manifests noncompliance with Judge Currie's Orders.  The Court's remedy of striking the words "United States Attorney" from Ms. Halligan's signature block constitutes a minimally invasive approach to reestablish respect for, and compliance with, the law in an active case before the undersigned. It falls far short of other exercises of inherent judicial power, such as imposing sanctions or dismissing an indictment. *See Shaffer*, 11 F.3d at 462 (listing remedies constituting permissible exercises of the court's inherent power).  Nor does it seek to relitigate the validity of Ms. Halligan's appointment.  As such, the Court's remedy constitutes "a reasonable response to a

specific problem." Further, no express rule or statute contradicts the Court's authority to do so.[4] For all of these reasons, the Court acts well within its inherent power to consider, on its own initiative, the issue of Ms. Halligan's misrepresentations before this Court.

At the end of the day, Ms. Halligan's Response asserts that she is free to act in an unlawful capacity, because she disagrees that she does so unlawfully. But that's not how our legal system works. By having continued to exercise a position to which she was unconstitutionally appointed, including by signing the indictment in this case as "United States Attorney," Ms. Halligan exercised "power that [she] did not lawfully possess." *Collins v. Yellen*, 594 U.S. 220, 258 (2021). In the words of Justice Gorsuch, since Ms. Halligan was "unconstitutionally installed," she "cannot wield executive power except as Article II provides. *Attempts to do so are void.*" *Id.* at 283 (Gorsuch, J., concurring in part) (emphasis added); *see United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."). Consequently, the Court must void Ms. Halligan's attempts to exercise power before this Court that she "did not lawfully possess." *Collins*, 594 U.S. at 258.

---

[4] Ms. Halligan invokes Federal Rule of Criminal Procedure 7(d), which permits courts to "strike surplusage from the indictment or information" upon a motion by a defendant. Fed. R. Crim. P. 7(d). That rule has no bearing on the Court's action here. The Court seeks not to strike "surplusage," which the Advisory Committee defines as "immaterial or irrelevant allegations," but to remove Ms. Halligan's misrepresentation, which suggests that she holds a position to which she was unconstitutionally appointed. Fed. R. Crim. P. 7(d) advisory committee's note to 1944 amendment. Rule 7 therefore does not reach the Court's proposed action, let alone contradict it.

### III. Conclusion

The Eastern District of Virginia has long enjoyed the service of experienced prosecutors with unquestioned integrity from both political parties serving as the United States Attorney. Despite coming from different political backgrounds and holding very different ideological views, they all shared an unwavering commitment to the Rule of Law, putting the interests of the citizens of the District before their own personal ambitions, as true public servants do. Unfortunately, it appears that this ethos has come to an end. A district judge acting at the direction of the Chief Judge of the Fourth Circuit has ruled on behalf of the district judges of this District that Ms. Halligan was invalidly appointed as the United States Attorney. No matter all of her machinations, Ms. Halligan has no legal basis to represent to this Court that she holds the position. And any such representation going forward can only be described as a false statement made in direct defiance of valid court orders. In short, this charade of Ms. Halligan masquerading as the United States Attorney for this District in direct defiance of binding court orders must come to an end.

For all of these reasons, the Court hereby STRIKES the words "United States Attorney" from the signature block on the Indictment (ECF No. 1), as well as all other Government filings in this case. (ECF Nos. 13, 18, 22.) The Court further BARS Ms. Halligan from representing herself as the United States Attorney in any pleading or otherwise before this Court until such time as she may lawfully hold the office either by Senate confirmation or appointment by this Court pursuant to 28 U.S.C. § 546(d), should either occur. That bar shall become effective at 12:01 a.m. on January 21, 2026, and shall apply to any filings submitted thereafter.[5]

---

[5] For the avoidance of any doubt, this bar does not prevent Ms. Halligan from entering an appearance or signing her name to pleadings in this Court as a "Special Attorney," whatever that title may mean.

The Court recognizes that Ms. Halligan lacks the prosecutorial experience that has long been the norm for those nominated to the position of United States Attorney in this District. Consequently, and in light of her inexperience, the Court grants Ms. Halligan the benefit of the doubt and refrains from referring her for further investigation and disciplinary action regarding her misrepresentations to this Court at this time. However, this Memorandum Order provides notice that, should Ms. Halligan persist in ignoring Judge Currie's Orders and this Memorandum Order in any matter before the undersigned, the Court will initiate disciplinary proceedings against Ms. Halligan and any other signatory to an offending pleading pursuant to Federal Rule of Disciplinary Enforcement V(A).

Let the Clerk file a copy of this Order electronically and notify all counsel of record, the Chief Judge and all United States District Judges, Magistrate Judges and Bankruptcy Judges of this Court, Judge Currie, and all members of the Richmond Division of the United States Attorney's Office for the Eastern District of Virginia with current CM/ECF registrations.

The Court further ORDERS that Ms. Halligan shall provide a copy of this Memorandum Order to the Attorney General and Deputy Attorney General, since they appear as signatories on her Response.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: January 20, 2026